**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GAWARGYOUS SHIND, <br><br> Plaintiff, <br><br> v. <br><br> ESSEX COUNTY, N.J., *et al.*, <br><br> Defendants. | Civil Action No. 25-18886 (JXN)(SDA) <br><br><br> **OPINION** |

**NEALS**, District Judge

This case arises from *pro se* Plaintiff Gawargyous Shind's ("Plaintiff") pre-trial detention at the Essex County Correctional Facility ("Jail"). Plaintiff alleges that the Jail was overcrowded and dirty; that medical staffing shortages left Plaintiff's significant dental pain untreated or undertreated; and that "blind spots" in the Jail's surveillance system exposed Plaintiff to the risk of physical harm. Plaintiff sued Essex County and the Jail's medical provider,[1] Warden,[2] and Director[3] (collectively, "Defendants"), and applied to proceed *in forma pauperis* ("IFP").

Before the Court are Plaintiff's Amended Complaint (ECF No. 5) and IFP Application (ECF No. 1-2). The Court has reviewed the IFP Application and screened Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915. For the reasons set forth below, the IFP Application is **GRANTED** and the Amended Complaint is **DISMISSED** *without prejudice*.

---

[1] CFG Health Systems, LLC ("CFG").
[2] Guy Cirillo ("Warden").
[3] Ronald Charles ("Director").

## I.  BACKGROUND

### A.  Statement of Facts

From August 2022 to November 2024, Plaintiff was a pretrial detainee at the Jail. (*See* Am. Compl. at *8,[4] ECF No. 5.) Plaintiff alleges the units were overcrowded, forcing Plaintiff to "sleep in unsanitary conditions without proper hygiene," leading to a "severe, painful skin rash due to the unsanitary water and showers." (*Id.*)

Plaintiff claims he suffered from "significant dental pain." (*Id.*) Plaintiff states that he submitted multiple "sick call" requests to CFG, the Jail's medical provider, but was "repeatedly ignored or delayed in receiving treatment." (*Id.*) Referencing a 2022 audit of the Jail, Plaintiff asserts that the Director knew CFG had "critical" medical staff shortages, but "failed to enforce contract compliance" and "act[ed] with deliberate indifference" to Plaintiff's dental pain. (*Id.* at *8–9.)

Plaintiff also asserts that Essex County, the Director, and the Warden housed Plaintiff "in a facility they knew was unsafe." (*Id.* at *9.) In Plaintiff's telling, the Jail had "dangerous 'blind spots' where security cameras were missing or non-functional." (*Id.*) Though Plaintiff claims Essex County, the Director, and the Warden had "specific knowledge" of the blind spots, they "failed to install" cameras or staff the Jail, exposing Plaintiff to "an objectively unreasonable risk of assault." (*Id.*)

### B.  Procedural History

Plaintiff sued Defendants, applied to proceed IFP, and later amended his Complaint. (*See* Compl., ECF No. 1; IFP Appl., ECF No. 1-2; Am. Compl.) The Amended Complaint alleges Defendants subjected him to unconstitutional conditions of confinement ("Count I"); were

---

[4] Pincites preceded by an asterisk (*) use ECF pagination.

deliberately indifferent to Plaintiff's medical needs ("Count II"); and failed to protect Plaintiff from unreasonable safety risks ("Count III"). (*See id.* at *8–9.) Plaintiff seeks $250,000 in compensatory damages for the physical pain and scarring he endured from his untreated skin infections and dental conditions; $500,000 in punitive damages from the Director and Warden for their "reckless and callous indifference" to Plaintiff's rights; injunctive relief to "remediate the security 'blind spots' and enforce contract compliance"; and legal costs. (*Id.* at *10.)

## II.    <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 1915, a plaintiff may proceed with a civil action IFP without paying the court filing fee. The IFP statute requires that a plaintiff submit a complete financial affidavit to demonstrate financial need. 28 U.S.C. § 1915(a). *See Atl. Cnty. Cent. Mun. Ct. Inc. v. Bey*, No. 24-105, 2024 WL 1256450, at *1 (D.N.J. Mar. 22, 2024) ("The requirement that a plaintiff demonstrate financial need through submission of a complete financial affidavit is an essential part of the statute."). Under the statute, the Court must assess the financial affidavit to determine whether the plaintiff can proceed IFP. 28 U.S.C. § 1915(a).

The Court must also decide *sua sponte* whether the Complaint should be dismissed. 28 U.S.C. § 1915(e). An IFP complaint must be dismissed if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). To survive *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted). "[A]

3

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In screening a complaint to verify whether it meets these standards, however, this Court is mindful of the requirement that *pro se* pleadings must be construed liberally in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "Yet there are limits to [district courts'] procedural flexibility" and "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

## III.    <u>DISCUSSION</u>

### A.    The Court Grants the IFP Application

The decision to grant IFP status "turns on whether an applicant is 'economically eligible' for such status." *Taylor v. Sup. Ct. of N.J.*, 261 F. App'x 399, 400 (3d Cir. 2008) (quoting *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976)). A person need not be "absolutely destitute" to proceed IFP. *Id.* Rather, the applicant "must show the inability to pay the filing and docketing fees." *Id.*

Plaintiff has done so here. According to Plaintiff's IFP application, he has no income or assets.[5] The Court is satisfied that Plaintiff is unable to pay filing fees. Therefore, the Court **GRANTS** Plaintiff's IFP application.

### B.    The Court Dismisses the Complaint

Plaintiff alleges Defendants subjected him to unconstitutional conditions of confinement, inadequate medical care, and unreasonable safety risks. Reading the Amended Complaint liberally, the Court construes Plaintiff's claims as having been brought under 42 U.S.C. § 1983.

---

[5] The Court notes that Plaintiff states he was not incarcerated when he filed his IFP application. (*See* IFP Appl. at 5.)

4

To state a § 1983 claim, the plaintiff must show "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### i.    Count I: Unconstitutional Conditions of Confinement

First, Plaintiff alleges Defendants subjected him to unconstitutional conditions of confinement because his unit was overcrowded and unsanitary. Pretrial detention conditions implicate the Fourteenth Amendment's "protection against deprivation of liberty without due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Hubbard v. Taylor* (*Hubbard I*), 399 F.3d 150, 158–60 (3d Cir. 2005). Pretrial detention conditions violate the Fourteenth Amendment if they "amount to punishment of the detainee . . . . prior to an adjudication of guilt." *Bell*, 441 U.S. at 535. To determine whether a set of pretrial conditions amount to punishment, the Court must ask "first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." *Hubbard v. Taylor* (*Hubbard II*), 538 F.3d 229, 232 (3d Cir. 2008) (quoting *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).

The Fourteenth Amendment does not embody a "one man, one cell" principle. *Bell*, 441 U.S. at 542. "The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not rise to the level of a constitutional violation." *Moore v. Camden Cnty. Corr. Facility*, No. 16-5865, 2017 WL 3718161, at *2 (D.N.J. Aug. 28, 2017). Even so, confining "a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious

5

questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell*, 441 U.S. at 542.

### a.    The Director and Warden

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citation omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Plaintiff fails to show either the Director's or Warden's personal involvement in his conditions of confinement. He does not adequately allege, with appropriate particularity, that either official, (1) personally directed Plaintiff's cell to be overcrowded and dirty; or (2) actually knew Plaintiff's cell was overcrowded and dirty and permitted the conditions to persist. At most, Plaintiff alleges that a 2022 audit of the Jail revealed that "inmates were being housed in Intake more than [five] days." (Am. Compl. at *8.) Plaintiff has not demonstrated, however, that, (1) either the Director or Warden knew the contents of the audit; (2) based on reading the audit, either the Director or Warden had *actual knowledge* that Plaintiff's cell was overcrowded and dirty; or (3) that Plaintiff was even housed in a cell within the scope of the audit. In any event, the bare fact that inmates were being housed at intake for more than five days at a time appears to serve a legitimate purpose—to prevent overcrowding elsewhere. Because Plaintiff does not show personal

6

involvement by either the Director or Warden in creating unconstitutional conditions of Plaintiff's confinement, Count I is **dismissed *without prejudice*** as to the Director and Warden.

### b.    Essex County

A local governmental entity like Essex County "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff must instead show that Essex County's "choices were the 'moving force' behind the constitutional violation." *Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025). To show Essex County was the "moving force" behind Plaintiff's alleged injury, Plaintiff must show (1) an "unconstitutional policy or custom" of Essex County caused his injuries; or (2) Plaintiff's injuries were caused by "a failure or inadequacy by [Essex County] that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Plaintiff does not adequately allege either theory. To show an unconstitutional policy or custom, Plaintiff must (a) "point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject"; or (b) "evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 105–06. Aside from the reference to a 2022 audit, Plaintiff does not identify an official Essex County policy or present evidence of Essex County's well-settled course of conduct that resulted in the Jail being dirty and overcrowded. In sum, Plaintiff has not shown that an Essex County policy or custom was unconstitutional or proximately caused his injury. *See Roman*, 914 F.3d at 798.

To state a "failure or inadequacy" claim, Plaintiff must advance "proof that a [County] actor disregarded a known or obvious consequence of his action." *Hightower*, 130 F.4th at 357 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). Plaintiff generally must show

that a "pattern of similar constitutional violations" put the County on notice that, by failing to act, it was being deliberately indifferent to inmates' rights. *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Plaintiff makes no allegation that, (a) an Essex County actor disregarded a known or obvious consequence of his or her action; (b) there was a pattern of similar constitutional violations putting Essex County on notice, and Essex County failed to act; or (c) that Essex County's failure to act caused Plaintiff to endure unconstitutional conditions of confinement. Therefore, Count I is **dismissed *without prejudice*** as to Essex County.

### c.   CFG

When the state employs a private company like CFG to provide "essential medical care" to prisoners or pretrial detainees, that company acts "under color of state law for purposes of § 1983." *West v. Atkins*, 487 U.S. 42, 57 (1988). Yet, as with any civil rights claim, CFG "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). Rather, Plaintiff must show, (1) CFG had an unconstitutional policy or custom that caused his injuries; or (2) CFG acted with deliberate indifference, which caused his injuries. *Id.* at 583–84. However, Plaintiff alleges neither. Accordingly, the Court **dismisses *without prejudice*** Count I as to CFG.

### ii.   *Medical Indifference*

A pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). To state a claim for the violation of the right to medical care, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Id.* at 582. Deliberate indifference exists where an individual defendant, "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical

treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rokita v. Klinefelter*, No. 24-2197, 2025 WL 3172767, at *1 (3d Cir. Nov. 13, 2025) (quoting *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999)). An institutional defendant is liable for failure to provide adequate medical care if (1) the defendant has a policy or custom that caused the plaintiff to receive inadequate medical care; or (2) the defendant's failure to act "reflects a deliberate or conscious choice" to ignore Plaintiff's medical needs. *Forrest*, 930 F.3d at 105.

Where "the size of the medical staff at a prison in relation to the number of inmates having serious health problems constitutes an effective denial of access to diagnosis and treatment by qualified health care professionals," a plaintiff can show deliberate indifference. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979); *see also Parkell v. Danberg*, 833 F.3d 313, 339 (3d Cir. 2016) ("Systemic logistical constraints such as understaffing, which are unrelated to medical judgment, will typically not excuse failure to provide adequate medical care."). But "there is a difference between actors who are actually responsible for those logistical constraints (or capable of remedying them) and actors who are not." *Parkell*, 833 F.3d at 339. Only the actors responsible for or capable of remedying logistical constraints may be held liable for the denial of access to medical care caused by a staff shortage. *Id.*

As before, Plaintiff does not particularly allege that either the Director or Warden had "personal involvement" in Plaintiff's allegedly inadequate medical care, either through "participation or actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. At most, Plaintiff alleges that the 2022 audit revealed "critical shortages" in medical staffing, and that the Director and Warden failed to enforce "contract compliance." Moreover, Plaintiff does not allege that either the Director or Warden were responsible for the medical staff shortage or were capable of

9

remedying the issue. Nor has Plaintiff alleged that Essex County or CFG (a) were responsible for or capable of remedying the staffing shortage; (b) had a policy or custom that caused Plaintiff to not receive medical care; or (c) failed to act despite some known consequences of the medical staffing shortage. Therefore, Count II is **dismissed *without prejudice***.

### iii.   *Failure to Protect*

The Constitution requires prison and jail officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a failure-to-protect claim, the plaintiff must show, "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Peay v. Fisher*, 763 F. App'x 248, 251 (3d Cir. 2019) (citation omitted). Deliberate indifference, in this context, means the defendant "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff's failure-to-protect claim falls short. To start, Plaintiff does not adequately allege he was incarcerated under conditions posing a substantial risk of harm. Plaintiff claims the Jail had "blind spots" without functioning security cameras where "violence could occur." (Compl. at *9.) But Plaintiff has not alleged that these "blind spots" posed an excessive risk to *his* safety. At most, the risk Plaintiff alleges is "that an inmate with a history of violence might attack another inmate for an unknown reason." *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012), *abrogated in part on other grounds by Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024). But this is too speculative to plausibly establish deliberate indifference. *Id.* More to the point, Plaintiff failed to allege he suffered any harm. *Dew v. Ellis*, No. 22-1136, 2023 WL 3736355, at *6 (D.N.J. May 31, 2023) (dismissing failure-to-protect claim where the plaintiff "fails to plead any cause of harm to

10

himself."); *Myer v. Giroux*, No. 15-71, 2018 WL 6831147, at *8 (W.D. Pa. Dec. 28, 2018) (dismissing failure-to-protect claim where "[t]here is no evidence in the record to suggest that Plaintiff was ever threatened with physical harm or assaulted."). Therefore, Count III is **dismissed** *without prejudice*.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's IFP Application (ECF No. 1-3) is **GRANTED** and the Complaint (ECF No. 1) is **DISMISSED** *without prejudice*. Plaintiff shall have thirty (30) days to file an amended pleading addressing the deficiencies identified herein. An appropriate Order accompanies this Opinion.

DATED: 5/22/2026

**JULIEN XAVIER NEALS**
**United States District Judge**

11